*448 OPINION.
Marquette:
The taxpayer claims that on September 1, 1916, it entered into a written lease with the Bealty Co. for certain real estate, at a stipulated rental, and that on February 21, 1919, it paid for the cancellation of said lease, the amount of $60,128.08, which is deductible from its gross income for the year in which it was paid, as an ordinary and necessary business expense. The Commissioner contends that a written lease was never in fact entered into and that even if it was actually executed, it was voidable by the taxpayer and therefore the amount paid for the cancellation thereof was not deductible from gross income as an ordinary and necessary business expense.
We .are of the opinion, up>on consideration of the evidence presented, that a written lease embodying the terms set forth in the resolutions adopted by the stockholders and board of directors, respectively, of the Store Co. and the Bealty Co. on August 31, 1916, was actually executed by the two corporations. A written lease had been prepared and was exhibited and read to the stockholders and directors at the time of the adoption of the resolutions referred to, and its existence appears to have been known and recognized by the stockholders and new boards of directors of the corporations on February 21, 1919. On that date, L. C. Brown, who formerly controlled the affairs of the corporations and who owned a majority of their voting stock, had been ousted and his interests taken over by creditors. New boards of directors representing creditors’ committees were in charge of the companies, and it is not reasonable to suppose that the new board of directors of the taxpayer, which was composed of persons in no wise connected with the Bealty Co., would have recognized the validity of a lease that had no existence in fact. It appears that the lease in question was never recorded, but the failure or omission' to record it would not impair its legal effect as between the parties thereto. We are satisfied from the evidence that a written lease for the premises referred to herein was actually entered into by the two corporations on September 1, 1916, and that it was in existence on February 21, 1919. This leaves for consideration only the question as to whether or not the lease was on that date a binding and valid obligation of the Store Co. If it was binding and valid, it follows -that the amount paid for the can *449 cellation thereof was a necessary and ordinary business expense of the Store Co. and hence deductible from income.
The Commissioner contends that the lease, if it was in fact executed, was made, by interlocking boards of directors who were controlled by L. C- Brown; that the rental was excessive and exorbitant and imposed a burden on the Store Co. for the benefit of Brown, who owned all the common stock of the Realty Co., and that the making of the lease constituted fraud upon the minority stockholders of the Store Co. and rendered the lease voidable by them.
We do not believe that the contention of the Commissioner is sustained by the evidence in this appeal. It is true that in the light of events occurring subsequent to the making of the lease it was found that the rental to be paid thereunder imposed a burden upon the Store Co. and that it was found advisable by that company to secure a modification or cancellation thereof if it could be done. However, there is nothing in the record, except the fact that the rental was subsequently found to be too high, to show that Brown desired or intended to' milk the Store Co. for the benefit of the Realty Co. On the other hand, the evidence shows that from time to time prior to February 21, 1919, concessions in the way of modification of the rent to be paid were made by the Realty Co. and in addition thereto it appears that the Realty Co. borrowed $200,000, which it invested in preferred stock of the Store Co., in order to help it meet its obligations. However, assuming for the purpose of this opinion that the lease might have been avoided by stockholders of the Store Co. in a proper action brought for that purpose, it does not follow that it can be attacked and set aside in a collateral proceeding at the instance of a person or persons not injured thereby. The rule as to transactions between companies having interlocking directorates is stated in the case of Marcy v. Guanajuato Development Company, 228 Fed. 150, as follows:
Without attempting to review the authorities on this point, I think that the rule which is supported, both by reason and the weight of authority, is that the presence of directors on both sides of a transaction does not give a dissenting stockholder an arbitrary right to avoid the transaction, hut does give him the right to subject it to the scrutiny of the court, and easts upon the corporation or directors concerned the burden of showing that the transaction is fair and absolutely free from fraud. * * *
Also, the Supreme Court of the United States in the case of Corsicana National Bank v. Johnson, 251 U. S. 68, 90, said:
The fact that the same persons were directors and managers of both corporations subjects their dealing inter sese to close scrutiny. That two corporations have a majority or even the whole membership of their boards of directors in common does not necessarily render transactions between them void; but transactions resulting from the agency of officers or directors acting at the same time for both must be deemed presumptively fraudulent unless *450 expressly authorized or ratified by the stockholders; and certainly where the circumstances show, as by the undisputed evidence they tended to show in this case, that the transaction would be of great advantage to one corporation at the expense of the other, especially where in addition to this the personal interests of the directors or any of them would be enhanced at the expense of the stockholders, the transaction is voidable by the stockholders within a reasonable time after discovery of the fraud.
In this case the lease was executed on September 1, 1916, and was approved and ratified by the stockholders of the Store Co., upon which the fraud, if any, was perpetrated. It remained in existence until February 21, 1919, at which time the stockholders of the Store Co. — Brown, who is charged with conceiving and directing the fraudulent acts, having in the meantime disposed of his interests in the company — did not question its validity but expressly recognized it and authorized the board of directors to pay a certain amount to have it canceled. They not only did not question the lease but by their action ratified it: Since no attempt was made to avoid the lease by either of the parties thereto, we are of the opinion that it may not now be attacked by the Commissioner, a stranger to the transaction, in the absence of allegations and proof that it was fraudulently made with the intent to evade the payment of tax.
It may be further pointed out that where a contract is not void but merely voidable by any of the parties thereto its validity will be recognized by the Board if the parties themselves have not taken advantage of its legal defects, but have chosen to carry out its provisions. In the Appeal of Herschel V. Jones, 1. B. T. A. 1226, the f a.cts were that in the year 1911 Jones, feeling morally obligated to assume certain losses sustained by J ames J. Hill, occasioned by the failure of a grain and brokerage house in which Jones was interested, gave to Hill his promissory note for $71,000, it being understood by Hill and Jones that Hill would not press Jones for payment of the note and that it would be renewed from time to time until Jones felt able to pay it. Hill died in the year 1916. Among the effects of his estate was found a note renewing the original note given in 1911 by Jones. The executors of Hill’s estate demanded payment in 1920, and the note and interest were paid by Jones during that year in a total amount of $71,949.23. The note was not enforceable except with the consent of Jones. In other words, it was voidable at his instance. However, the Board held that, since Jones actually paid the note and interest in the year 1920, the amount paid was deductible by him from his gross income for that year as a loss arising out of bxisiness transactions.
We are of the opinion in view of the foregoing that the amount of $60,128 paid by the taxpayer to the Bealty Co. during the fiscal year ended February 1, 1920, as a consideration for the cancellation of the *451 lease of September 1, 1916, was an ordinary and necessary business expense and deductible in computing the taxpayer’s net income for that year.
ARUNDELL not participating.